UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL NO. 06-111-DCR

UNITED STATES OF AMERICA                                    PLAINTIFF

VS:                     RECOMMENDED DISPOSITION OF MOTION
                          TO SUPPRESS EVIDENCE

RICKY ALLEN WALKER                                         DEFENDANT

* * * * * * * *

Defendant Ricky Allen Walker moves to suppress certain evidence in this action, and the matter stands fully briefed. *See* DE## 38; 42 (Government response); 43 (Defendant's reply). For the reasons that follow, the Court recommends that the District Court GRANT the motion and suppress the particular evidence at issue.

The indictment in this action contains eight charges against Defendant Walker.[1]  Count 1 alleges that, from July 2005 to August 9, 2005,  Defendant and Alanna Sue Wallace conspired to possess and distribute five+ grams of crack cocaine, in violation of 21 U.S.C. §§ 846 and 841.  The remaining counts against Defendant assert seven distinct crack distribution offenses during the time period.  One of those counts, Count 7, alleges a distribution offense involving five+ grams in late July.

On August 9, 2005, state authorities searched a residence in Perry County, Kentucky, under permission of a state search warrant.  Authorities believe that Defendant and Ms. Wallace lived at

---

[1]

The Court already convicted and sentenced Co-Defendant Alanna Sue Wallace. *See* DE# 22 (Judgment).

1

that residence, at least intermittently, and the search yielded eight grams of crack, small quantities of other controlled substances, cash, a digital scale, and personal identification papers of both Defendant and Ms. Wallace.   *See* DE# 42-2 (Application and Warrant, including return).

Defendant contends that the relevant warrant application did not provide probable cause and that the warrant therefore was invalid.  Defendant also contends that no reasonable officer would have relied on the warrant, making *Leon*'s good faith exception to the exclusionary rule inapplicable. The United States contests both the probable cause and *Leon* arguments presented.  Defendant requests that the Court suppress any use of the evidence seized per the August 9, 2005 state warrant.[2]

The Court held a hearing on May 21, 2007 and offered both parties a full and fair chance to present any evidence and argument to the Court.  Both the Defendant and the United States expressly declined to present evidence, each agreeing that the Court must resolve the matter based only on the four corners of the warrant application.  The Court has reviewed all materials submitted and the full written record.

### Factual Background

The warrant's sponsor and affiant was Det. Russell Dishner, a HIDTA Drug Task Force officer.  The warrant application's *entire* stated basis for probable cause is the following, set forth in Det. Dishner's "Affidavit for Search Warrant":

---

[2]

Notably, the evidence at issue apparently relates *only* to the asserted conspiracy (Count 1), which purports to encompass a period reaching to the search date.  Each remaining charge against Defendant addresses a distinct transactional event that *pre-dates* the August 9, 2005 search.  As such, the ruling on the motion to suppress would not affect prosecution or proof of Counts 2-8 of the indictment.  The United States contends that "audio or video recordings" establish the occurrences in those counts.  *See* Government's Response, at 1.

Affiant has been an officer in the aforementioned agency for a period of 10 years and the information and observations contained herein were received and made in his capacity as an officer thereof.

On the 08 day of August, 2005, at approximately 2300 pm, affiant received information from:

A Kentucky State Police cooperating witness who purchased approximately 2 grams suspected Crack Cocaine for $320.00.

Acting on the information received, affiant conduced the following independent investigation:

The KSP cooperating witness has made prior Crack Cocaine purchases from this residence.

Several complaints have been received concerning Ricky Walker selling Controlled Substances from this residence.

HIDTA Task force has also purchased suspected Marijuana from this residence.

Affiant has reasonable and probable cause to believe that grounds exist for the issuance of a Search Warrant, based on the aforementioned facts, information and circumstances and prays that a Search Warrant be issued, that the property be seized, or any part thereof, and brought before any court and/or retained subject to order of this court.

Premised on the affidavit, the Perry District Court issued a warrant on August 9, 2005, at "12:06 a.m." Execution of the warrant, also on August 9, produced the listed contraband, which is the subject of the pending motion. *See* DE# 42-2 (warrant with return).

Defendant attacks the probable cause basis, decrying the totality of hearsay, the absence of a valid temporal or premises nexus, and the lack of adequate source corroboration. To Defendant, the warrant's flaws are so extensive as to defeat both probable cause and *Leon* application. The United States, after offering a curious standing theory, generally affirms both the existence of probable cause and the application of *Leon*.

**Analysis**

*a) Threshold standing issue and the evidentiary basis for decision*

The parties expressly determined to forgo the presentation of evidence on the suppression issue and advised that the Court should resolve all issues concerning suppression on the four corners of the warrant application and the written record. *See* DE# 41 (minute sheet from hearing). This is appropriate under applicable law, which restricts review of both probable cause and *Leon* to the four corners, absent circumstances not here present. *See, e.g., United States v. Frazier*, 423 F.3d 526, 531 & 535-36 (6th Cir. 2005)(limiting probable cause review of warrant to four corners of application, but permitting consideration, in *Leon* inquiry, of additional information *actually shared* with the issuing magistrate but omitted from application).

The central argument of the United States concerns Defendant's standing. Importantly, the United States does not contend that Defendant generally lacks standing to challenge a search of the premises addressed by the warrant. Indeed, the Government and Defendant each described a constitutionally cognizable interest in the premises by Walker. *See* Defendant's Memo in Support, at 1 (describing warrant as executed "at the residence of the defendant"); Government's Response, at 1 ("Defendant was known to stay at that residence."); Defendant's Reply, at 2 (noting that personal items of Defendant, including identification materials and birth certificate, located at residence). Residential status, even on a temporary basis or as a guest, would vest Walker with a legitimate expectation of privacy and a right to challenge the premises search and warrant. *See Minnesota v. Olson*, 110 S. Ct. 1684, 1688-90 (1990). This standing principle is not in issue, based on the parties' arguments.

Rather, the United States leads its response by arguing that the key incriminating evidence–eight grams of crack, per the warrant return–came from a particular area in which Defendant has no legitimate privacy expectation.   The United States argues that, during the search, officers actually seized the contraband from the person[3] of Co-Defendant Alanna Wallace. Concisely, if not indelicately stated, the Government posits, "[T]he defendant has no standing whatsoever in the groin area of the co-defendant."  Government's Response, at 3.

Unfortunately, as Defendant counters, the *factual* premise for this interesting argument does not exist in the record.   The Government offered no proof as to the physical location of the contraband, and the record reveals no information about the matter.   The Court can not entertain a fact-specific theory when no facts permitting an analysis appear.   In pre-printed fashion, the return generally attributes the contraband to "premises/vehicles/persons described herein," but does not differentiate the source by item. The Court finds no basis for crediting the Government's claim, as a matter of fact.[4]  The Government did not seek permission to reopen the hearing or offer evidence to support the standing theory, and the state of the record forecloses the argument.

---

[3]

The warrant did authorize a search of "persons at the location which may be there for the purpose of trafficking."  *See* DE# 42-2.

[4]

Though not a part of the warrant application or return, the Court did review the Plea Agreement of Alanna Wallace.  *See* DE# 21.  In that agreement, the parties stipulated that, during the execution, "She [Wallace] handed the officers a plastic bag which contained . . . crack cocaine." *See id.* at ¶ 3.  This does not indicate whether Wallace retrieved the items from her person or her premises.   The agreement further confirms that both Walker and Wallace were living at the residence at the time.  *See id.*

*b) Probable Cause*

1. <u>Governing Principles</u>

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. Probable cause exists when there is "a fair probability that evidence of a crime will be located on the premises of the proposed search." *See United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005). The issuing judge considers the "totality of the circumstances" in making a practical, common-sense assessment. *See Illinois v. Gates*, 103 S.Ct. 2317, 2332 (1983).

In evaluating whether an executed warrant lacked probable cause, a reviewing court must accord "great deference" to the determination by the issuing judicial officer. *See United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006). The deference afforded avoids hypertechnical critiques, and "an issuing magistrate's discretion should only be reversed if it was arbitrarily exercised." *See United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000). Thus, the issuing judge's probable cause determination complies with the Fourth Amendment when there was a "substantial basis" for concluding that a search would uncover evidence of wrongdoing. *See Gates*, 103 S.Ct. at 2331; *Allen*, 211 F.3d 973. As noted, review for a "substantial basis" is confined to the four corners of the supporting affidavit. *See United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006); *Frazier*, 423 F.3d at 531. De novo review, or "line-by-line scrutiny" of the underlying affidavit, is also "inappropriate." *See Allen*, 211 F.3d at 973.

A warrant application must fairly establish, under the probable cause standard, a temporal and spatial nexus to the premises targeted. Thus,

> In addition to requiring that the facts be sufficiently timely to support a belief that the evidence sought still exists at the *time* of a search, probable cause also requires a reasonable belief that the evidence sought will be found at the *location* of the search; in other words, there must be a nexus established between the items sought and the place to be searched. *United States v. Van Shutters,* 163 F.3d 331, 336-37 (6th Cir.1998).

*United States v. Pope*, 330 F.Supp.2d 948, 956 (M.D. Tenn. 2004).

The Court recognizes that a judicial officer may properly rely on sufficiently *probative* hearsay evidence in determining whether probable cause exists. *See United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003); *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999). The hearsay character of tendered information is part of the overall totality of the circumstances assessed by a reviewing court.

Without question, for probable cause to exist, adequate indicia of trustworthiness must accompany information in a warrant application. *Illinois v. Gates* eliminated the technical, multi-layer filter through which courts screened warrant applications under *Spinelli* and *Aguilar*. *See Gates*, 103 S.Ct. at 2328. While *Gates* removed the potential rigidity in the analysis, the Supreme Court still retained its long-standing overall requirement that information in a warrant application be appropriately supported as a basis for warrant issuance: "We agree ... that an informant's 'veracity,' 'reliability,' and 'basis of knowledge' are all *highly relevant* in determining the value of his report." *See id*.; *see also id*. at 2332 (describing required evaluation based on "all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information"). The Sixth Circuit plainly requires that some corroborative factor must appropriately support or otherwise substantiate hearsay proffered in the warrant context:

> This Court has previously explained that "[a]n affidavit . . . must contain a statement about some of the underlying circumstances indicating the informant was credible or that his information was reliable."

*Helton*, 314 F.3d at 822 (quoting *Smith*, 182 F.3d at 477).  Further,

> When confronted with hearsay information from a confidential informant or an anonymous tipster, a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information.

*Helton*, 314 F.3d at 819; *see also Allen*, 211 F.3d at 976 (recognizing that cases "rightly insist[] upon substantial independent police corroboration . . . [in] the absence of any indicia of the informants' reliability").  Hearsay may supply probable cause, but only if that hearsay is sufficiently worthy of credit:

> In testing the sufficiency of probable cause . . . we have held that [an officer] may rely upon information received through an informant, rather than upon his direct observations, *so long as* the informant's statement is reasonably corroborated by other matters within the officer's knowledge.

*See Helton*, 314 F.3d at 819 (emphasis added)(quoting *Jones v. United States*, 80 S.Ct. 725, 735 (1960), *overruled on other grounds*, *United States v. Salvucci*, 100 S.Ct. 2547 (1980)).

"Veracity" or "reliability" concerns the general credibility of the informant or whether the specific information provided by the informant is contextually dependable.  *See Smith*, 182 F.3d at 477.  A supporting affidavit may demonstrate the informant's reliability or veracity by simply explaining the informant's "past performance" and record of involvement with authorities.  *See id*. at 478; *Frazier*, 423 F.3d at 532.  "Basis of knowledge" refers to the particular means by which an informant obtained particular information.  *See Smith*, 182 F.3d at 477.  The issuing judicial officer may reasonably infer that an informant gained his information in a reliable way when the informant provides an explicit and detailed description of the alleged wrongdoing. *See id*.  Again, these are

factors within the total evaluation, not formulaic elements.  Still, it is clear in the Sixth Circuit, that uncorroborated information from a source not adequately qualified as trustworthy and reliable is *not sufficient* to establish probable cause:  "[I]n the absence of any indicia of the informants' reliability, courts insist that the affidavit contain *substantial* independent police corroboration."  *Frazier*, 423 F.3d at 532 (emphasis added); *see also Allen*, 211 F.3d at 976.

Merely characterizing a witness as "cooperating," without more, falls far short of establishing veracity or reliability.[5]  Cooperation, to the Court, of itself only indicates a *willing* participant or source and implies no solid basis for inferring a record of reliability or trustworthiness. *Compare United States v. Weaver*, 99 F.3d 1372, 1379 (6th Cir. 1996)(finding informant's reliability not established by a statement in the affidavit that the informant "had given information of violation of law of the state, which information thereafter was found to have been accurate and reliable").

As to the basis of knowledge, "explicitness of detail is needed" when there is no indication about how an informant obtained his information.  *See Smith*, 182 F.3d at 481.  Anonymous tips demand more stringent scrutiny than reports from confidential informants.  *See Helton*, 314 F.3d at 820.  Ordinarily, the Sixth Circuit will evaluate whether the anonymous information is "rich in relevant detail" or otherwise corroborated by the affiant.  *See, e.g.*, *United States v. Leake*,  998 F.2d 1359, 1365 (6th Cir. 1993).  An unknown number of general complaints–of undetermined age and reliability–has limited value in assessing probable cause.  *See, e.g.*, *United States v. Hammond*, 351 F.3d 765, 773 (6th Cir. 2003).

---

[5]

The Court could find no cases treating the modifier "cooperating" as itself contributing toward, much less establishing, sufficient reliability or veracity of a witness.  *See, e.g., United States v. Blair*, 214 F.3d 690, 696 (6th Cir. 2000)(assessing a "cooperating witness" only by evaluating "statements attesting to . . .  reliability").

2.  <u>The Affidavit at Issue</u>.[6]

The Court finds that the affidavit presented fails to establish probable cause, even granting the issuing court the substantial deference required.  That deference is not limitless.  *See, e.g., United States v. Parker*, 2006 WL 2161257, at \*3 (E.D. Mich. July 31, 2006)(noting that reviewing court does not defer if substantial basis for issuing warrant is absent).  Based on the warrant principles that necessarily govern, the Court finds that no substantial basis existed to justify state court issuance of the warrant under examination.  The Court, applying a commonsense and practical construction to the totality of the circumstances presented, perceives three plain categorical deficiencies[7] in the affidavit: the lack of an adequate temporal nexus; the lack of reliable and trustworthy information; and, the lack of an adequate nexus to the location targeted.

**(I) Temporal concerns**

The affidavit centrally relies on an alleged crack cocaine purchase by a "cooperating witness."  That "Kentucky State Police cooperating witness" allegedly "purchased approximately 2 grams suspected crack cocaine for $320.00."  *See* DE# 42-2.  Although the affiant, Det. Dishner, avers that he "received information" from the witness on "August 8 at 2300 pm," the affidavit gives no clue about *when* the alleged purchase of crack occurred.  The purchase could have been

---

[6]

Generally, a defendant "challenging a search pursuant to a warrant has the burden of proof." *See, e.g., United States v. Seckman*, 175 Fed. Appx. 193, (10th Cir. 2006).  In this scenario, where the parties stipulated that the affidavit alone resolves the validity of the warrant, the analysis calls for a purely legal assessment, rather than a factual evaluation.

[7]

The United States seems to perceive the warrant's vulnerability.  It concedes that the affidavit "could have been more artfully drafted," agrees that the affidavit "is lacking in certain pieces of information," and summarizes that the affidavit "contained adequate (yet lacking) probable cause."  *See* Government's Response, at 4, 5, & 7.

contemporaneous or near-in-time to the report to Det. Dishner, but it just as likely could have occurred days, weeks, months, or years prior to the tip.  There simply is no reference point provided, or fairly implied, to place the criminal activity with the transmission of information to the affiant as a temporal matter.

The same temporal criticisms apply to *every other* piece of intelligence in the affidavit.  The affidavit reports that the "KSP cooperating witness has made prior Crack Cocaine purchases from this residence."  Nothing in the text suggests whether those other purchases occurred recently or remotely.  The affidavit's citation to "[s]everal complaints . . . received concerning Ricky Walker selling Controlled Substances from this residence" likewise omits any basis for ascertaining or inferring when either authorities received the complaints or when the complainants alleged that trafficking occurred.  Finally, even the inclusion of a "HIDTA Task force" purchase of "suspected Marijuana from this residence" features no hint at when such purchase(s) occurred.

As referenced previously, "The probable cause inquiry gauges the likelihood that evidence of a crime may *presently* be found at a certain location."  *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006)(emphasis added).   A warrant's basis must provide "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause *at that time*."  *See id.* (citation omitted, emphasis in original).   In *Hython*, where probable cause substantially depended on a controlled buy, the flawed affidavit at issue "offer[ed] no clue as to when this single controlled buy took place."  *See id.* at 486.  *Hython* rejected the warrant, "[b]ecause probable cause has a durational aspect, [and] at least some temporal reference point is necessary to ascertain its existence."  *See id.*  Without an adequate reference point to assess the recency of alleged activity,

"there [was] absolutely no way to begin measuring the continued existence of probable cause." *See id.* (citation omitted).

Here, the warrant application provides no reference point for *any* of the information tendered, including the 2 gram-buy, the past buys, the anonymous complaints, and the HIDTA buy(s). The case *United States v. Bacote*, 2005 WL 3143987 (D. Minn. 2005) contains facts comparable to this scenario. In *Bacote*, the court rejected a warrant that an issuing magistrate had based on a controlled buy, citizen complaints, and a search of defendant's trash, which yielded controlled substance residue. The court denied probable cause because the affidavit "contain[ed] no dates explaining when the concerned citizens complained, when the trash . . . was searched, or when the controlled buy occurred." *See id.* at *3. The court noted that the temporal nexus necessity required the application to contain "recent, time-specific information . . . that the criminal activity described . . . is sufficiently close in time to the search warrant application." *See id.* Because no such validation existed, "the lack of dates [was] fatal to a finding of probable cause." *See id.*[8]

An affidavit simply must provide enough information for the issuing judge to fairly assess the likelihood of current contraband, or other items subject to seizure, at a particular location at the time of issuance. Where, as here, an affidavit wholly fails to provide or permit a fair inference as to that assessment, the affidavit fails to establish probable cause. *See also Hython,* 443 F.3d at 487

---

[8]

Certainly, characteristics of the underlying search basis affect the rigidity of the temporal analysis. As *Hython* noted, "The passage of time becomes less significant when the crime at issue is ongoing or continuous and the place to be searched is a secure operational base for the crime." *See Hython*, 443 F.3d at 485; *see also United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998)(noting that, "in investigations of ongoing narcotic operations, intervals of weeks or months . . . [do] not necessarily make the information stale")(quotations and citations omitted). Here, the affidavit does not provide information as to the timing or interrelatedness of any of its component allegations. As such, the Court cannot evaluate whether the nature of the conduct might ease the requirements of contemporaneous conduct.

("This deficiency alone [i.e., the absence of "some temporal reference point"] is sufficient to render the warrant invalid[.]"); *United States v. Huggins*, 733 F. Supp. 445, 447 (D.D.C. 1990)("In the instant case, there is nothing in the affidavit from which the date of the controlled purchase can be determined and accordingly there was no way for the judicial officer to determine whether the information was stale."). Based on the stark temporal deficiency in the affidavit, the Court finds the warrant arbitrarily issued and thus invalid.

### (II) Trustworthiness concerns

Even if a valid temporal nexus existed in the affidavit, the information presented is not sufficiently reliable to establish probable cause under the Fourth Amendment. Notably, all information in the affidavit is hearsay; the affiant claims no personal knowledge as to any of the information tendered. Further, the affidavit attributes none of the supporting bases to an identified source. In this Circuit, as noted, "[W]hen confronted with hearsay information from a confidential informant or an anonymous tipster, a court must consider the veracity, reliability, and basis of knowledge for that information as part of the totality[.]" *Helton*, 314 F.3d at 819; *id.* at 821 (requiring that, to receive a "high level of consideration" in the probable cause evaluation, anonymous allegations "must demonstrate veracity, reliability, and a sound basis for knowledge"). Each of the supportive statements suffers from significant defects as to overall trustworthiness.

The central tip, related to the 2 gram crack purchase, comes from a "cooperating witness." The affidavit does not identify the witness, which is not unusual or fatal.[9] However, the affidavit also does not in any manner reference or purport to establish the veracity or trustworthiness of the

---

[9]

*See, e.g., United States v. Pusey*, 189 Fed. Appx. 475, 479 (6th Cir. 2006)(noting that confidential nature of informant simply "one relevant consideration" in overall totality of circumstances relative to probable cause).

witness.  The affidavit references an acontextual purchase of suspected crack, but the affidavit does not indicate how, where, when, or from whom the witness got the information, or how the witness knew or suspected the transaction involved crack cocaine.  Nor does the affidavit provide any cognizable basis for crediting the witness or his/her story.

The affiant's "independent investigation" is an effort to substantiate the information about the buy.[10]  However, the investigation results add little to the Court's calculus.  The investigation, such as it was, actually only yielded general and unattributed information concerning either the cooperating witness or the "residence" at issue.  Thus, the affidavit first cites to "prior Crack Cocaine purchases from this residence" by the cooperating witness.  As with the description of the central buy, this reference contains no date parameters, no reference to the witness's basis of knowledge, and no indication that the affiant has any reason to credit the information.  If the cooperating witness provided the information about the central buy and past buys, as appears to be the case, both pieces of intelligence would raise identical and complimentary questions about trustworthiness and basis of knowledge, questions the affidavit does not answer.

The "several complaints" about Ricky Walker "selling Controlled Substances from this residence," on the record presented, amount to generalized and dateless rumors of criminal conduct by Defendant.  Reliable information about previous trafficking would be relevant, but the information yields no information on which to make a reliability assessment as to the complaints. *See Hammond*, 351 F.3d at 773 (rejecting "anonymous phone calls" which involved "numerous complaints on this residence" as not "substantial enough" to corroborate an underlying tip).

---

[10]

The affiant's corroborative efforts necessarily occurred between the tip at 11:00 p.m. on August 8 and warrant issuance at 12:06 a.m. on August 9th.

14

The HIDTA information indicates at least one undated previous purchase of "suspected Marijuana from this residence" by HIDTA. Again, the reference is without context, and the Court cannot determine from the affidavit whether a buy occurred through an agent or a cooperating witness. The affiant does not indicate personal knowledge of the HIDTA involvement and does not attribute that knowledge to a source vouched for by the affiant. Again, the Court must question, on the documents, the value of the HIDTA buy reference.

Based on the Court's analysis, the supporting affidavit lacks sufficient evidence of reliability and basis of knowledge for *every* source of relevant and incriminating information referenced in the affidavit. The affidavit reveals no independent or direct police corroboration.[11] According to the content of the affidavit, authorities did not monitor the residence for suspicious activity, attempt a verifying controlled buy, or even check the suspect's criminal history. *See Weaver*, 99 F.3d at 1379; *Leake*, 998 F.2d at 1365; *Helton*, 314 F.3d at 823. Each of these foibles factors into the Court's overall assessment. Further, the affidavit provides no track record or history of reliability or veracity as to any of the various sources.

_____

[11]

The Government suggests that the Court can rely on the affiant's assessment of the evidence presented, based on his "experience and knowledge." Thus, "[T]he court is entitled to rely upon his knowledge and experience as to the probable cause determination." *See* Government's Response, at 6. The Court agrees that law enforcement expertise often affects the probable cause evaluation, and a court generally may consider insight by law enforcement in the interpretation of evidence. Here, the factual basis in the warrant provided only historical references to conduct, and neither discussed or offered any expert, interpretive guidance from the affiant. A court may defer considerably to law enforcement interpretation of, *e.g.*, where evidence likely would exist based on expert evaluation of specialized information. *See, e.g., United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996); *see also United States v. Johnson*, 171 F.3d 601, 604 (8th Cir. 1999)("[T]he Fourth Amendment requires an officer to explain *why* the officer's knowledge of particular criminal practices gives special significance to the apparently innocent facts observed."). However, as here, a conclusory boilerplate paragraph vouching for probable cause is not an aid to the issuing court, which must make its own neutral and detached assessment as to that constitutional question.

In the Court's view as to this matter, based on the totality of the circumstances and even accounting for the deference due the issuing judge, the collective weight of the affidavit did not provide a "substantial basis" on which to issue a search warrant for Defendant's residence. *See Gates*, 103 S.Ct. at 2331. Because each of the statements itself is obviously and fatally devoid of reliability and source indicia, and because no adequate details or independent corroborative factors exist, "even when all . . . allegations are considered in the aggregate, they fail to establish probable cause by a significant margin." *Helton*, 314 F.3d at 823.

### (III) Physical nexus concerns

Finally, the Court determines that the affidavit does not establish a sufficient nexus to the location targeted. Again, the central alleged buy references *no location*, but rather only summarizes the quantity, alleged substance, and price. Thus, the core of the factual basis connects neither to the premises involved or any other defined place.

The investigative summary references "this residence" as to each supporting entry: the alleged "prior Crack Cocaine purchases" by the cooperating witness; the "[s]everal complaints" about "Ricky Walker selling Controlled Substances from this residence"; and the HIDTA purchase of "suspected Marijuana from this residence." While these entries might suffice, if any part of the affidavit supported the currency of the conduct, the absence of the required temporal connection renders the citation to "this residence" virtually meaningless. Activity at the residence matters, but only if the activity is sufficiently contemporaneous to permit an inference that evidence currently would appear at the premises.[12] Again, with no fixed point to permit the evaluation, the material

---

[12]

The use of the word "prior" as to the other purchases by the cooperating witness arguably provides a slender nexus to the location, if one construes that adverb as connecting to the central buy tip. Thus, although the central buy mentions no location, "prior" purchases from the residence may

does not provide the required nexus.

Finally, nothing in the affidavit dependably ties Ricky Walker, or his conduct, to the residence.  The affidavit provides no context, source, or corroboration related to the "several complaints" of Walker trafficking at the residence.   Additionally, the affidavit itself does not suggest that Walker currently lives at or has any ongoing connection to the premises.

### b) Leon Application

Even without probable cause, evidence subject to suppression may survive the exclusionary rule under the *Leon* good faith exception.  In *United States v. Leon*, 104 S.Ct. 3405 (1984), the Supreme Court held that the Fourth Amendment exclusionary rule will not bar evidence seized in reasonable, good faith reliance on a search warrant subsequently determined to be invalid.  *See Leon*, 104 S.Ct. at 3413; *Leake*, 998 F.2d at 1366.  In such cases, application of the exclusionary rule would yield no additional deterrent effect, given that the officer's reliance on the warrant was objectively reasonable.  *See Hython*, 443 F.3d at 484.

There are four situations, identified by the Supreme Court, where *Leon* good faith would *not* exist: 1) where the affiant provided false information to the issuing judge and knew or should have known about the falsity; 2) where the issuing magistrate "wholly abandoned his judicial role"; 3) where the supporting affidavit did not provide the magistrate with a substantial basis for determining the existence of probable cause, or in other words, the warrant application was "so lacking in probable cause as to render official belief in its existence entirely unreasonable"; and 4) where the warrant is "so facially deficient" that the "executing officers cannot reasonably presume it to be

---

indicate that the central buy also occurred at the residence.  Such a nexus, requiring active grammatical gymnastics by the reviewing court, is thin.

valid." *Leon*, 104 S. Ct. at 3421 (citations omitted); *see also Helton*, 314 F.3d at 824 (reciting standard).

In this case, there is no suggestion that Det. Dishner presented false statements to the state judge. Furthermore, Defendant does not assert that the state judge abandoned her judicial role or that the warrant itself was facially defective. Defendant, instead, contends that it was "objectively unreasonable" for authorities to rely on the search warrant in this case based on a plain absence of probable cause. *See* Defendant's Support Memo, at 6-7.

Defendant characterizes the affidavit at issue as "bare bones" because it is "so lacking in indicia of probable cause." In *United States v. McPhearson*, 469 F.3d 518, 526 (6th Cir. 2006)(emphasis added), the Court included within the "bare bones" category an affidavit that "merely 'states suspicions, beliefs, or conclusions, *without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge*.'" Regardless of some linguistic discrepancies in the formulation of *Leon,* the Sixth Circuit consistently applies the same test in cases where the defendant claims the officer's reliance on the warrant was objectively unreasonable: whether a reasonably well-trained officer would have known that the search was illegal despite the issuing magistrate's authorization. *See Leake*, 998 F.2d at 1367; *Weaver*, 99 F.3d at 1380.

Ordinarily, the "determination of good-faith reliance, like the determination of probable cause, must be bound by the four corners of the affidavit." *United States v. Laughton*, 409 F.3d 744, 751 (6th Cir. 2005). The United States generally bears the burden of proof when attempting to invoke *Leon*. *See United States v. Harju*, 466 F.3d 602, 607 (7th Cir. 2006); *see also Leon*, 104 S.Ct. at 3421 (referencing prosecution's burden "to establish objective good faith").

*Hython* refused to apply *Leon* where a warrant provided undated information and contained no basis for ascertaining the timeliness of the tendered grounds for issuance:

> [W]ithout any of these elements [*i.e.*, dated information or data sufficient to "ground the undated controlled buy within a finite period of investigation"], the affidavit is patently insufficent.  No well-trained officer could have reasonably relied on a warrant issued on the basis of this affidavit.

*Hython*, 443 F.3d at 488-89.  The requirement of a valid temporal nexus is well-known.  *See, e.g., United States v. Zayas-Diaz*, 95 F.3d 105, 114-15 (1st Cir. 1996)(rejecting *Leon* in case involving "undated stale" information, and stating: "[A] reasonably well-trained law enforcement officer should be familiar with the fundamental legal principle that both the 'commission' and 'nexus' elements of 'probable cause' include an essential temporal component.")(citing *Leon*)).

The Court finds that a "reasonably well-trained officer would have known" the material related in this affidavit did not support probable cause to search the premises, despite the state court's issuance of the warrant.  *See Leake*, 998 F.2d at 1367.  In addition to the glaring temporal deficits, a reasonable officer would know to afford minimal weight, if any, to information received from a source whose reliability, veracity, and basis of knowledge are wholly unknown and unstated. *See Helton*, 314 F.3d at 824.  This criticism applies to each and every allegation in the affidavit. Also, the "investigation" results reflect multiple layers of untested hearsay.   Police should know that such information is inherently subject to doubt and is "questionable from the outset."  *See id*. at 822.   The corroborating information essentially consists of bare allegations of drug trafficking. *See id*. at 824.  This information is sparse in relevant detail and without marks of trustworthiness. Because of these limitations, a reasonably-trained officer would attach minimal significance to the collective evidence presented in the affidavit.

As a result, the Court believes "a reasonably prudent officer would have sought greater corroboration to show probable cause." *See id.*; *see also Weaver*, 99 F.3d at 1381.  The analysis, being objective, requires the Court to impute to the relevant officer "reasonable knowledge of what the law prohibits." *See Leon*, 104 S.Ct. at 3419 n. 20.

 Here,  the affidavit does not indicate that authorities monitored the premises for suspicious activity (e.g., a high degree of traffic from short-term visitors); attempted to conduct a controlled buy; or even checked the suspects' criminal history. *See Weaver*, 99 F.3d at 1379; *Leake*, 998 F.2d at 1365; *Helton*, 314 F.3d at 823.  Instead, it appears Det. Dishner simply inserted reputational information about Defendant or the premises.   The unspecific hearsay evidence offered clearly is not the sort of "substantial independent police corroboration" demanded by courts when there is no indication that a confidential informant otherwise is reliable. *See Frazier*, 423 F.3d at 532; *see also Allen*, 211 F.3d at 976.

The Court recommends suppression.  The requirement of a valid temporal link between supporting conduct and warrant issuance is plain, and plainly absent in this affidavit.  Further, and particularly in a context featuring a wholly-hearsay basis for a warrant application, a reasonably-trained officer would be aware of the need to establish the reliability and basis of knowledge for relevant informants.  Such an officer, in this context, would be aware that the affidavit lacks any adequate corroborative basis and falls well-short of establishing probable cause. *Leon* does not spare this warrant from operation of the exclusionary rule.

## RECOMMENDATION

For all the reasons stated, the Court recommends that the District Court GRANT the Motion to Suppress filed by the Defendant. *See* DE #38.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b)(1), Rule 59(b), and local rule, within ten days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

This the 11th day of June, 2007.

Signed By:

Robert E. Wier

United States Magistrate Judge